UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CRIMINAL ACTION NO. 5:19-cr-00007-TBR-1

UNITED STATES OF AMERICA,                                                              PLAINTIFF

v.

CHAD ELLIOT BRADLEY,                                                                    DEFENDANT

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Motion by Defendant Chad Elliot Bradley ("Defendant") to suppress certain evidence uncovered by law enforcement officers in a search conducted on November 27, 2018 at Defendant's residence and statements made subsequent to that arrest. [DN 20.] The United States has responded, [DN 28], and Defendant has replied. [DN 29.] This matter is ripe for adjudication. For the following reasons, Defendant's motion is **DENIED.**

## I. Background

This case arises from Defendant's arrest on November 27, 2018. As a result of the arrest, Defendant has been charged with one count of possession of methamphetamine with the intent to distribute. [DN 1.] At 7:55 p.m. on November 27, 2018, Deputy Brooke Nelms obtained a search warrant for Defendant's residence. [Supp. Hrg. R. (Nelms) 62: ¶¶ 21-25, 63: ¶¶ 1-2.] The warrant was executed that night by detectives and deputies from the Graves County Sheriff's Department, and the Kentucky State Police. [Supp. Hrg. R. (Pervine) 28: ¶¶ 1-2.] The search warrant only authorized a search of Defendant's home. It did not authorize a search of Defendant's vehicle or boat. [Supp. Hrg. R. (Edwards) 46: ¶¶ 23-25, 47: ¶¶ 1-4.]

1

Deputy Edwards began searching the residence for drugs and found a smoking pipe and a marijuana roach. [Supp. Hrg. R. (Edwards) 40: ¶¶ 15-19, 41: ¶¶ 2-8.] Once he completed the search of the home, Deputy Edwards went outside and searched Defendant's boat. After searching the boat, he opened the door of Defendant's black truck and found a black bag on the seat. [Supp. Hrg. R. (Edwards) 41: ¶¶ 22-25.] According to Deputy Edwards, Trooper Pervine then came outside to tell him the truck was not included in the search warrant. [Supp. Hrg. R. (Edwards) 51: ¶¶ 3-4.] Trooper Sullivan arrived with his K9, Diego, after Deputy Edwards opened the door of the truck. [Supp. Hrg. R. (Edwards) 43: ¶¶ 5-7.]

Upon arrival, Trooper Sullivan "ran" his K9 around Defendant's parked truck and the K9 showed a "change in behavior" between the driver's door and the rear door. [Supp. Hrg. R. (Sullivan) 7: ¶¶ 10-13, 17 ¶¶ 14-17.] The K9 did not signal an "alert" but the change in behavior signaled an odor of narcotics. [Supp. Hrg. R. (Sullivan) 7: ¶¶ 14-16.] Sullivan then ran the K9 around the car a second time to confirm the change in behavior. [Supp. Hrg. R. (Sullivan) 8: ¶¶ 9-12.] The K9 exhibited the same behavior and Sullivan subsequently informed a deputy that there was enough reason for a search. [Supp. Hrg. R. (Sullivan) 8: ¶¶ 11-13.] A search was conducted, and methamphetamine was found. [Supp. Hrg. R. (Sullivan) 20: ¶¶ 10-12.]

## II. Legal Standard

The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. U.S. Const. amend. IV. Consistent with this, constitutional jurisprudence provides "the basic rule that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth

Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). One of those exceptions is the automobile exception. The automobile exception allows officers to conduct a warrantless search of a vehicle if there is probable cause to believe the vehicle contains evidence of a crime. *United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998). "Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Smith v. Thornburg,* 136 F. 3d 1070, 1073 (6th Cir. 1998) (internal quotations omitted). Determination of probable cause must be judged by a totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 230 (1983).

### III. Discussion

#### A. Deputy Edwards' Entry of Vehicle

It is undisputed that the search warrant did not include Defendant's vehicle. In order for a search of the vehicle to legally take place, an exception to the warrant requirement must have applied. In his testimony, Deputy Edwards admits to opening the door of the vehicle before Trooper Sullivan arrived with his K9. Upon opening the door, he saw a black bag containing a ziplock bag. Shortly after, Trooper Pervine informed Deputy Edwards that the truck was not included in the search warrant and Deputy Edwards stepped away.

Although seemingly minor, opening the door constituted a search of Defendant's car. "A search occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *U.S. v. Jacobsen,* 466 U.S. 109, 113 (1984). The interior of a car is subject to the protections of the Fourth Amendment. *New York v. Class,* 475 U.S. 106, 114-115 (1986). It is

unclear if Deputy Edwards moved anything in the vehicle. He has no recollection of doing so. However, this is immaterial because simply opening the door of the vehicle constitutes a search. Since there is no indication that Deputy Edwards had any evidence to establish probable cause, this was a violation of Defendant's constitutional rights.

### B. Dog Sniff of the Vehicle

As both parties have stated, a positive detection by a reliable K9 provides sufficient probable cause to search a vehicle. *Florida v. Harris,* 568 U.S. 237, 246-247 (2013). When a K9 is certified by a bona fide organization, the court may presume probable cause exists unless there is conflicting evidence. *Id.* Testimony of the dog's training and reliability is satisfactory evidence. *U.S. v. Hill,* 195 F. 3d 258, 273-274 (6th Cir. 1999).

Trooper Sullivan testified extensively about the training of the K9. Sullivan and his K9 were sent to the Southern Ohio Police K9 for two months of training in patrol, tracking, and narcotics. [Supp. Hrg. R. (Sullivan) 4: ¶¶ 7-10.] The K9 became certified to signal the presence of marijuana, cocaine, methamphetamine, ecstasy, and heroin. [Supp. Hrg. R. (Sullivan) 4: ¶¶ 13-14.] As it pertains to narcotics training, Sullivan and his K9 did "finds" inside residences and vehicles. [Supp. Hrg. R. (Sullivan) 4: ¶¶ 24-25]. The training included blank vehicles or areas to ensure the K9 does not alert in the absence of narcotics. [Supp. Hrg. R. (Sullivan) 5: ¶¶ 12-25.] In addition to the training in Ohio, Trooper Sullivan and his K9 are required by the Kentucky State Police to attend training once a week, four times a month. [Supp. Hrg. R. (Sullivan) 6: ¶¶ 13-14.] This training includes searching vehicles every day. [Supp. Hrg. R. (Sullivan) 7: ¶ 1.] This testimony provides ample evidence to establish probable cause.

Defendant has challenged the reliability of the K9 and the circumstances surrounding the search, but those arguments are not persuasive. Defendant argues the sniff was not reliable because the K9 did not "alert" but had a "change in behavior". During training, K9s are trained to sit on source—which is an alert—and exhibit a change in behavior when on odor. [Supp. Hrg. R. (Sullivan) 5: ¶ 8-12]. Defendant asserts that the K9 was on odor rather than on source because Deputy Edwards could have transferred the odor of marijuana or some other narcotic to the vehicle. Inside Defendant's home, Deputy Edwards found a smoking pipe with suspected marijuana inside and a marijuana roach prior to searching the vehicle. Deputy Edwards was wearing his Battle Dress Uniform—BDUs—during this search. [Supp. Hrg. R. (Edwards) 50: ¶ 2.] He had worn BDUs in other searches where drugs were found. [Supp. Hrg. R. (Edwards) 50: ¶¶ 8-10.] It is Defendant's contention that Deputy Edwards may have contaminated the area either with marijuana odor from the residence or from narcotic odors that may have been on his BDUs from previous searches. Defendant asserts that this contamination is why the K9 was on odor rather than on source with around one pound of methamphetamine present.

The amount of marijuana Deputy Edwards came into contact with in Defendant's home was likely small. Although even a small amount of marijuana would still emit an odor, it is not likely that an odor of marijuana would have transferred to Deputy Edwards' BDUs and then again to the vehicle.

During the hearing, Deputy Edwards stated that there is a possibility that his BDUs were exposed to the odor of narcotics before this search. Defendant asserts that the odor of narcotics from prior searches lingered on Deputy Edwards' clothes. There has been no evidence provided that the BDUs or Deputy Edwards had an odor of narcotics at the scene. Further, wearing clothes that have been worn in previous searches cannot serve as a basis for suppression alone. Officers

participate in many drug searches throughout the course of their career. If participation in these searches and the possibility that their clothes were exposed to the odor of narcotics is enough to suppress evidence, no signal by a K9 could ever be found valid. Deputy Edwards testified to washing his BDUs regularly, which would reduce the likelihood that any odor would linger on the clothes. [Supp. Hrg. R. (Edwards) 50: ¶¶ 14-15.] There is no evidence that establishes a likelihood that Deputy Edwards' BDUs had an odor of marijuana or any other narcotic. Therefore, the Court does not find this argument persuasive.

Further, Trooper Sullivan offered testimony that it is not uncommon for the K9 to show a change in behavior rather than an alert with one pound of methamphetamine present. During training in Southern Ohio, narcotics were not placed in a plastic bag or vacuum sealed. [Supp. Hrg. R. (Sullivan) 13: ¶¶ 11-12.] Trooper Sullivan testified that he has seen the K9 show a change in behavior rather than an alert when narcotics are placed in a ziplock bag. [Supp. Hrg. R. (Sullivan) 22: ¶¶ 8-10.] The drugs located in Defendant's car were in ziplock bags. "The better measure of a dog's reliability thus comes away from the field, in controlled testing environments." *Florida v. Harris,* 568 U.S. 237, 246 (2013). Therefore, evidence that the K9 showed a change in behavior under similar circumstances in training and was still certified is persuasive.

Defendant also argues that the K9's change in behavior is suspect because he was on odor at a part of the vehicle where narcotics were often hidden during training. During training at Southern Ohio, narcotics were placed in the door seam. [Supp. Hrg. R. (Sullivan) 13: ¶¶ 7-8.] While in training, the K9 would always alert in this area because drugs were placed there. However, during the search of Defendant's vehicle, the K9 did not alert. If the K9 was reacting to this area of the vehicle simply because he was trained to find drugs there, it would be expected that he would alert rather than show a change in behavior as he did in training.

6

After reviewing all relevant evidence and circumstances, the Court has found the signal by the K9 to be reliable and therefore establish probable cause for a search. This probable cause was established independent of Deputy Edwards opening the door.

### C. Defendant's Statements

The Court need not address this argument at length. Defendant argues that the statements made were based on an illegal search of Defendant's vehicle and should therefore be suppressed. The Court has ruled that the search was a legal search. No evidence that casts doubt on the statements made by Defendant has been offered. Therefore, Defendant's motion must fail.

### IV. Conclusion

There is no dispute that the vehicle was not included in the search warrant. Therefore, it was improper for Deputy Edwards to open the door to the vehicle prior to the K9 unit arriving. Although this was an improper act, probable cause was established independent of this act.

The Court does not find it suspect that the K9 showed a change in behavior rather than an alert—even with one pound of methamphetamine present. The testimony of Trooper Sullivan stating it is not unusual for a K9 to show a change in behavior under these circumstances was persuasive. The Court finds it more reasonable to believe the change in behavior was due to the odor of the methamphetamine inside the vehicle rather than the potential transfer of marijuana odor or lingering odor on Deputy Edwards' BDUs.

Defendant is correct that the K9 looks to be rewarded after completing a search. However, a K9 is only rewarded after correctly finding narcotics. The K9 is not rewarded simply because a

search was conducted. In training, "blanks" are done to prevent false positives. The Court defers to the evidence of training and certification.

Since the positive indication from the K9 provided probable cause for a search. The requirements for the automobile exception are met.

**THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:**

1. Defendant's Motion [DN 20] is **DENIED.**

**IT IS SO ORDERED.**

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

September 11, 2019

cc: Counsel of Record