UNITED STATAES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:19-CR-00007-TBR

UNITED STATES OF AMERICA                                                    PLAINTIFF

v.

CHAD ELLIOT BRADLEY                                                        DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon Motion by Defendant Chad Elliot Bradley ("Defendant") to reconsider the Court's order denying his Motion to Suppress. [DN 38.] The time to respond has passed. This matter is ripe for adjudication. For the following reasons, Defendant's motion is **DENIED.**

**I.   Background**

This case arises from Defendant's arrest on November 27, 2018. As a result of the arrest, Defendant has been charged with one count of possession of methamphetamine with the intent to distribute. [DN 1.] At 7:55 p.m. on November 27, 2018, Deputy Brooke Nelms obtained a search warrant for Defendant's residence. [Supp. Hrg. R. (Nelms) 62: ¶¶ 21-25, 63: ¶¶ 1-2.] The warrant was executed that night by detectives and deputies from the Graves County Sheriff's Department, and the Kentucky State Police. [Supp. Hrg. R. (Pervine) 28: ¶¶ 1-2.] The search warrant only authorized a search of Defendant's home. It did not authorize a search of Defendant's vehicle or boat. [Supp. Hrg. R. (Edwards) 46: ¶¶ 23-25, 47: ¶¶ 1-4.]

Deputy Edwards began searching the residence for drugs and found a smoking pipe and a marijuana roach. [Supp. Hrg. R. (Edwards) 40: ¶¶ 15-19, 41: ¶¶ 2-8.] Once he completed the

search of the home, Deputy Edwards went outside and searched Defendant's boat. After searching the boat, he opened the door of Defendant's black truck and found a black bag on the seat. [Supp. Hrg. R. (Edwards) 41: ¶¶ 22-25.] According to Deputy Edwards, Trooper Pervine then came outside to tell him the truck was not included in the search warrant. [Supp. Hrg. R. (Edwards) 51: ¶¶ 3-4.] Trooper Sullivan arrived with his K9, Diego, after Deputy Edwards opened the door of the truck. [Supp. Hrg. R. (Edwards) 43: ¶¶ 5-7.]

Upon arrival, Trooper Sullivan "ran" his K9 around Defendant's parked truck and the K9 showed a "change in behavior" between the driver's door and the rear door. [Supp. Hrg. R. (Sullivan) 7: ¶¶ 10-13, 17 ¶¶ 14-17.] The K9 did not signal an "alert" but the change in behavior signaled an odor of narcotics. [Supp. Hrg. R. (Sullivan) 7: ¶¶ 14-16.] Sullivan then ran the K9 around the car a second time to confirm the change in behavior. [Supp. Hrg. R. (Sullivan) 8: ¶¶ 9-12.] The K9 exhibited the same behavior and Sullivan subsequently informed a deputy that there was enough reason for a search. [Supp. Hrg. R. (Sullivan) 8: ¶¶ 11-13.] A search was conducted, and methamphetamine was found. [Supp. Hrg. R. (Sullivan) 20: ¶¶ 10-12.]

Defendant previously filed a motion to suppress that this Court denied. [DN 30.] Defendant now asks the Court to reconsider his motion.

## II. Legal Standard

Defendant has filed this motion more than 28 days after entry of the Order denying the Motion to Suppress. However, the Court finds that there were extenuating circumstances causing the delay. Consideration of this motion causes no prejudice to the Government. Therefore, the Court will consider this Motion under Rule 59(e).

"District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment." *In re Saffady*, 524 F.3d 799, 803 (6th Cir. 2008). "A

district court may modify, or even rescind, such interlocutory orders." *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991). Although the Federal Rules of Civil Procedure do not provide expressly for "motions for reconsideration," courts generally construe such motions as motions to alter or amend a judgment under Rule 59(e). *E.g.*, *Moody v. Pepsi-Cola Metro. Bottling Co.*, 915 F. 2d 201, 206 (6th Cir. 1990); *Taylor v. Colo. State Univ.*, 2013 WL 1563233, at *8-9 (W.D. Ky. Apr. 12, 2013).

The Sixth Circuit has consistently held that a Rule 59 motion should not be used either to reargue a case on the merits or to reargue issues already presented, *see Whitehead v. Bowen*, 301 F. App'x 484, 489 (6th Cir. 2008) (citing *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998)), or otherwise to "merely restyle or rehash the initial issues," *White v. Hitachi, Ltd.*, 2008 WL 782565, at *1 (E.D. Tenn. Mar. 20, 2008) (internal quotation marks and citation omitted). "It is not the function of a motion to reconsider arguments already considered and rejected by the court." *Id.* (citation omitted). Accordingly, the Sixth Circuit instructs that a motion for reconsideration should only be granted on four grounds: "Under Rule 59, a court may alter or amend a judgment based on: '(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)). Furthermore, because there is an interest in the finality of a decision, this Court and other district courts have held that "[s]uch motions are extraordinary and sparingly granted." *Marshall v. Johnson*, 2007 WL 1175046, at *2 (W.D. Ky. Apr. 19, 2007) (citing *Plaskon Elec. Materials, Inc. v. Allied-Signal, Inc.*, 904 F. Supp. 644, 669 (N.D. Ohio 1995)); *accord Rottmund v. Cont'l Assurance Co.*, 813 F. Supp. 1104, 1107 (E.D. Pa. 1992).

### III. Discussion

Defendant argues that the Court committed a clear error of law in its determination that probable cause was established independent of Deputy Edwards' improper search. In support, Defendant cites to *Murray v. United States,* 487 U.S. 533 (1988). The Court in *Murray* held that when an illegal search has taken place, evidence is still admissible if the "later, lawful seizure is genuinely independent of an earlier, tainted one". *Id.* at 542. Defendant contends that the discovery of the evidence flows directly from Deputy Edwards' improper search and must therefore be suppressed.

Trooper Sullivan testified that he was requested to help execute a search warrant. [Supp. Hrg. R. (Sullivan) 7: ¶¶ 5-6.] He was unaware of any search of the vehicle prior to his arrival. [*Id.* at ¶¶ 9-14.] Defendant states that Trooper Sullivan was called because "officers were suspicious of the presence of narcotics inside the truck based on what Deputy Edwards observed when conducting his illegal search." [DN 38 at 6.] In support of this argument, Defendant relies on Deputy Edwards' statement that "they made the notion to call a K9" after Trooper Pervine informed Deputy Edwards that the truck was not in the search warrant. [Supp. Hrg. R. (Edwards) 51: ¶¶ 3-7.] Trooper Pervine informed Deputy Edwards that the truck was not in the search warrant after Pervine saw Edwards with the truck door open. [*Id.* at 51: ¶¶ 3-4.] Defendant states this clearly shows that the decision to call a K9 was because of Deputy Edwards' search.

However, that decision is not as clear as Defendant claims. During testimony, Trooper Pervine stated that he was unsure who made the call for the K9 unit. [Supp. Hr. R. (Pervine) 30: ¶¶ 21-23]. Trooper Pervine also stated that he looked through the window of the car prior to any search "by a deputy or by a trooper" and saw a black bag with ziplock bags hanging out of it that made him suspicious. [*Id* at 28: ¶¶ 18-25; 29: ¶¶ 4-9.] Deputy Edwards testified that when Trooper

Pervine saw him with the door open Pervine only said, "[t]hat truck's not in the search warrant." [*Id.* at 51: ¶¶ 3-4.] Edwards also testified that as soon as he was told that the truck was not on the search warrant, "[he] just sat back and let them do their thing."

Although Defendant states that the timing of the event is clear and conclusive, it is not. It is just as likely that Trooper Pervine looked through the window prior to Deputy Edwards' search; Deputy Edwards then conducted a search and called Trooper Pervine over; Trooper Pervine informed him that the truck was not included in the warrant; then the K9 unit was called. Even though, as Deputy Edwards testified, someone called for the K9 unit after Deputy Edwards' search, that does not negate the fact that Trooper Pervine would have gained suspicion prior to any improper search by Deputy Edwards. Therefore, there was cause for suspicion outside of Deputy Edwards' search and there was an independent basis for the K9 unit being called.

.

## IV. Conclusion

For the above stated reasons, **IT IS HEREBY ORDERED** that Defendant's Motion to Reconsider Order Denying Motion to Suppress is **DENIED.**

**IT IS SO ORDERED.**

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

November 7, 2019

cc: counsel