UNITED STATATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:19-CR-00007-TBR

UNITED STATES OF AMERICA            PLAINTIFF

v.

CHAD ELLIOT BRADLEY            DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendant Chad Bradley's ("Defendant") Motion to Suppress. [DN 47.] The government simultaneously filed its brief opposing suppression. [DN 48.] Defendant previously filed a Motion to Reopen the Suppression Hearing. [DN 42.] The Court held a hearing on November 25, 2019. As such, this matter is ripe for adjudication. For the reason that follow, Defendant's Motion to Reopen Suppression Hearing [DN 42] and Supplemental Motion to Suppress [DN 47] are **GRANTED.**

### I. Background

This case arises from Defendant's arrest on November 27, 2018. As a result of the arrest, Defendant has been charged with one count of possession of methamphetamine with the intent to distribute. [DN 1.] Defendant filed an initial Motion to Suppress the methamphetamine found and all statements made. [DN 20.] This Court denied Defendant's motion. [DN 30.] Defendant subsequently changed attorneys and filed a Motion to Reconsider. [DN 38.] The Court also denied that motion. [DN 41.] Defendant then file a Motion to Reopen the Suppression Hearing. The Court granted Defendant's motion due to ambiguity in the testimony from the first Suppression Hearing.

1

## II. Legal Standard

Searches and seizures conducted without a warrant issued by a judge or magistrate are per se unreasonable under the Fourth Amendment unless a specifically established exception applies. *Katz v. United States*, 389 U.S. 347, 357 (1967). When searches are conducted without a warrant, the government has the burden of showing that an exception applies. *Vale v. Louisiana*, 399 U.S. 30, 34 (1970). "The exclusionary rule prohibits the admission of evidence seized in searches and seizures that are deemed unreasonable under the Fourth Amendment, as well as derivative evidence acquired as a result of an unlawful search." *U.S. v. Kennedy*, 61 F.3d 494, 497 (6th Cir.1995) (citing *Wong Sun v. United States,* 371 U.S. 471, 484–85 (1963)). The government must prove by a preponderance that an exception to the exclusionary rule applies.

## III. Discussion

Here, the Court decided in its first Memorandum Opinion and Order that Deputy Edwards' action of opening the door of Defendant's truck constituted an improper search. [*See* DN 30 at 3-4.] The Court came to this decision after both parties stipulated the warrant did not include any vehicles. However, there was ambiguity with regards to the independence of the K9 being called from this improper search by Deputy Edwards.

As both parties have stated, an improper search does not necessarily require a court to suppress all evidence obtained subsequent to that search. The police are to be put "in the same, not a worse, position that they would have been in if no police error or misconduct had occurred." *Nix v. Williams,* 467 U.S. 431, 443 (1984). If there is an independent source for the discovery of the evidence, the evidence must not be suppressed. When determining if an independent source exists, the court must consider, "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or

instead by means sufficiently distinguishable to be purged of the primary taint." *Id.* at 442 (quoting *Wong Sun v. United States,* 371 U.S. 471, 488 (1963).

**A. Independent Source Doctrine**

The Court will first consider whether the independent source doctrine applies. When "a later, lawful seizure is genuinely independent of an earlier, tainted one…there is no reason why the independent source doctrine should not apply." *Murray v. United States,* 487 U.S. 533, 542 (1988). Here, the government argues the independent source doctrine applies because the probable cause to search the truck was based on the K9's change in behavior and Trooper Sullivan was always intending to use the K9 at Defendant's residence. Defendant argues the doctrine does not apply because all actions that took place with Defendant's truck are derivative of Deputy Edwards' improper search. The Court agrees with Defendant.

There is no dispute that Trooper Sullivan and his K9 arrived after Deputy Edwards conducted his improper search. [Supp. Hrg. R. DN 45 (Edwards) 28: ¶¶ 7-12.] The issue here is whether Trooper Sullivan instructed his K9 to sniff the car independent of the information obtained as a result of that search.

During the first suppression hearing, Trooper Pervine stated he looked through the window of Defendant's truck prior to any search "by a deputy or by a trooper". [Supp. Hrg. R. DN 23 (Pervine) 2:8 ¶¶ 18-25; 29: ¶¶ 4-9.] If Trooper Pervine looked through the window prior to the search and gained suspicion that would be an independent source for the evidence. However, after the second suppression hearing, it is clear that Trooper Pervine only looked in the car window as a result of Deputy Edwards' search. Trooper Pervine explicitly stated that he did not personally look through the windows of the truck prior to serving the search warrant. [Supp. Hrg. R. DN 45 (Pervine) 5: ¶¶ 9-12.] Pervine further stated that at no point prior Deputy Edwards stating he

3

believed there was something in the truck did Pervine look in the truck. [*Id.* at 11: ¶ 25; 12: ¶¶ 1-9.]

Pervine looked in the passenger-side window "in response to what Deputy Edwards told [Pervine]". [*Id.* at 13: ¶¶ 2-17.] Trooper Pervine had no "intention of looking at the vehicle". This leaves no doubt about the timing of and motivation for Pervine looking into the window. The government states that Edwards' improper search only revealed the same black bag and plastic baggies that were visible by looking through the windows of the truck. The Court agrees with this statement. However, the Court cannot ignore the fact that the window was only looked through as a result of the improper search. Therefore, there was no suspicion about the contents of Defendant's truck prior to Edwards' improper search.

The government also argues that the K9 sniff is independent of the improper search. Defendant argues that the K9 was requested to the scene and was asked to sniff the truck because of the improper search. The Court agrees with Defendant.

It is undisputed that Trooper Sullivan arrived at the scene after Edwards' search. [*See* Supp. Hr. R. DN 45 (Sullivan) 44: ¶¶ 1-4.] However, it is unclear who, at Defendant's residence, requested Trooper Sullivan to the scene and why they did so. During the first Suppression Hearing, Edwards testified that "they made the notion to call a K9" after Edwards searched the truck. [Supp. Hrg. R. DN 23 (Edwards) 51: ¶¶ 3-7.] At the second hearing Edwards stated again that someone called for a K9 after he made entry into the truck and was informed it was not included in the warrant. [Supp. Hrg. R. DN 45 (Edwards) 28: ¶¶ 7-25; 29: ¶¶ 1-13.] However, he also stated that he did not hear a phone call to Trooper Sullivan or to anyone else requesting the K9. [*Id.* at 33: ¶¶ 15-25; 34: ¶¶ 1-4.] Although the timing of the phone call is not absolutely clear, the only statements regarding the timing have the call being placed after Edwards' search. The

motivation for the call also is not completely clear. However, there is testimony supporting Defendant's assertion that Sullivan was requested because of Edwards' search.

Trooper Sullivan testified during both hearings that when he arrived at Defendant's residence, he took the K9 out of the vehicle, gave him a bathroom break and was requested to run the K9 on the truck before going inside the residence. [Supp. Hrg. R. DN 23 (Sullivan) 7: ¶¶ 7-11; Supp. Hrg. R. DN 45 (Sullivan) 44: ¶¶ 16-23.] Trooper Sullivan also testified that it was either Deputy Edwards, Trooper Pervine or Trooper Jessup that asked him to run the dog around the truck before going into the residence. [Supp. Hrg. R. DN 45 (Sullivan) 51: ¶¶17-22.] There is no evidence on the record suggesting Trooper Jessup was involved in Edwards' improper search of the truck. However, there also is no evidence stating it was Jessup and not Edwards or Pervine who asked for the truck to be searched. Without evidence to this point, the Court finds that the government has not proven by a preponderance of the evidence that the decision to have the dog sniff was "wholly independent of any constitutional violation." *Nix,* 467 U.S. at 443. A request by Edwards or Pervine to have the K9 sniff the truck taints that search. The Court cannot say with certainty whether a request by Jessup would taint the K9's search because there is no evidence about Jessup's involvement in this incident.

The government argues that a ruling in favor of Defendant would run afoul to case law. In *Silverthorne Lumber Co. v. United States,* the Court held that a constitutional violation does not render evidence "sacred and inaccessible." 251 U.S. at 392 (1920). That Court went on to state that such evidence could be used "if knowledge of [the evidence] is gained from an independent source". *Id.* If there is no independent source, the evidence may not be used. This Court has stated that the government has not met its burden in proving an independent source. Without an independent source, it would run afoul to case law to allow this evidence.

5

The independent source doctrine seeks to put police in the same position if the police error had not occurred. Here, in Detective Pervine's own words, it is clear that but for the improper search, there was no intention of searching the truck. The government also argues that Trooper Sullivan was already planning to use the K9 at Defendant's residence. The Court will address this argument in the following section.

**B. Inevitable Discovery**

"If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means…then the deterrence rationale has so little basis that the evidence should be received." *Nix,* 467 U.S. 431 at 444. The exclusion of evidence that would have inevitably been discovered places the police in a worse position than they would have been absent the error. *Id.* at 444. The determination of inevitable discovery "involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment and does not require a departure from the usual burden of proof at suppression hearings." *Nix,* 467 U.S. at 444 n.5. The district court is to "determine, viewing affairs as they existed at the instant before the unlawful search, what would have happened had the unlawful search never occurred." *United States v. Kennedy,* 61 F.3d 494, 498 (6th Cir. 1995) (quoting *United States v. Eng,* 971 F.2d 854, 861 (2d Cir. 1992)). Inevitable discovery "applies when the government can demonstrate either the existence of an independent, untainted investigation that inevitably would have uncovered the same evidence or other compelling facts establishing that the disputed evidence inevitably would have been discovered." *Kennedy,* 61 F.3d at 499.

Here, the government argues Trooper Sullivan and the K9 were always going to the scene and therefore, the drugs would have been found even without requesting Trooper Sullivan's

presence and assistance. Defendant argues that there was no untainted investigation that would have led to the suspicion of Defendant's truck. Defendant further argues that the inevitability of Trooper Sullivan's arrival does not prove the inevitability of using the K9 on the truck. The Court agrees with Defendant.

Trooper Sullivan testified that he knew he was going to two residences on the night Defendant's home was searched. [Supp. Hrg. R. DN 45 (Sullivan) 43: ¶¶ 12-16.] On cross-examination Sullivan testified that prior to conducting either search he understood that he was only searching the residences. [*Id.* at 46: ¶¶ 5-17.] However, he also testified that the K9 was also brought for "any use that they needed me at that time to help with the narcotics search." [*Id.* at 43: ¶¶ 15-16.] It is clear that Trooper Sullivan's arrival at Defendant's residence was inevitable. However, that alone does not prove that the drugs in Defendant's truck would have inevitably been found.

Trooper Sullivan testified that it is not uncommon and that it is typical for him to run the K9 around a vehicle when search warrants are executed. [*Id.* at 44: ¶¶ 24-25, 45: ¶ 1; 56: ¶¶ 1-2.] However, this is not evidence of what would have happened on this day if the improper search did not occur. Trooper Pervine testified that he would not have looked at the truck if not for Deputy Edwards alerting him of the possibility of drugs. But for Edwards' improper search it is more likely than not that Sullivan never would have been requested to use the K9 on the truck. The government has not provided any evidence suggesting the boat or the other vehicle located at the residence were subjected to the use of a K9. The Court agrees with Defendant's assertion that if the use of the K9 on the truck was inevitable, absent any prior search, then the other vehicles on the property would have been searched as well.

7

Although the presence of the K9 was inevitable, the Court cannot say that the Government has proven by a preponderance of the evidence that the discovery of drugs in the truck was inevitable. Without such proof, this exception to the exclusionary rule does not apply.

## C. Attenuation Doctrine

The government does not argue this theory. However, the Court will address Defendant's argument. Under the attenuation doctrine, "[e]vidence is admissible when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained." *Utah v. Strieff,* 136 S. Ct. 2056, 2061 (2016) (internal quotations omitted). When determining the sufficiency of an intervening event, the court considers: the "temporal proximity between the unconstitutional conduct and the discovery of evidence"; the "presence of intervening circumstances"; and the "purpose and flagrancy of the official misconduct." *Id.* at 2062.

Temporal proximity does not favor attenuation "unless substantial time elapses between an unlawful act and when the evidence is obtained." *Id.* (internal quotations omitted). The Supreme Court has held that a lapse of time less than two hours does not warrant attenuation. *Brown v. Illinois,* 422 U.S. 590, 604 (1975). Here, it is not absolutely clear the exact time Edwards' search occurred and when the K9 arrived to sniff the truck. However, Edwards estimated that it took less than thirty minutes for the K9 to arrive after he searched the truck. [Supp. Hrg. R. DN 45 (Edwards) 28: ¶¶ 13-19.] Therefore, temporal proximity does not favor attenuation.

The second factor—intervening circumstances—also favors Defendant. "[T]he existence of a valid warrant favors finding that the connection between unlawful conduct and the discovery of evidence is sufficiently attenuated to dissipate the taint." *Strieff,* 136 S. Ct. 2056 at 2062

8

(internal quotations omitted). Here, there was no subsequent warrant issued. Also, no other event occurred between the improper search and the K9 search that could possibly serve as an intervening circumstance. Therefore, this factor does not favor attenuation.

Finally, the third factor favors attenuation. Exclusion is favored "when the police misconduct is most in need of deterrence—that is, when it is purposeful or flagrant." *Id.* at 2063. Here, the Court does not find the conduct to be so flagrant. As in *Strieff,* the Court finds that Edwards' search was negligent. Edwards stated that he "did not pay that much attention to what was being read, just that it was being read." [Supp. Hrg. R. DN 45 (Edwards) 23: ¶¶ 12-23.] Therefore, he was not aware that vehicles were not included on the warrant. This is not a purposeful or flagrant act. Without more, the Court cannot say this is more than negligent on Edwards' part. Defendant also argues that Pervine's failure to tell Edwards vehicles were not included in the warrant is reason to deny attenuation. Pervine should have informed Edwards of this fact and it likely would have avoided this situation. However, Pervine's failure to inform also does not rise to a purposeful or flagrant act. Again, at most this was a negligent act.

Even though the third factor favors attenuation, it does not overcome the other two factors weighing against attenuation. The evidence on the record supports a finding that the use of the K9 on the truck was directly related to Edwards' improper search. Therefore, the attenuation doctrine does not apply.

### IV. Conclusion

After the second suppression hearing, it became clear to the Court that the eventual discovery of the evidence was directly related to the improper search. The government has not proven by a preponderance of the evidence that the exclusionary rule does not apply. For the

9

above stated reasons, **IT IS HEREBY ORDERED** that Defendant's Motion to Reopen Suppression Hearing [DN 42] and Renewed Motion to Suppress [DN 47] are **GRANTED.**

    **IT IS SO ORDERED.**

*Thomas B. Russell*

Thomas B. Russell, Senior Judge
United States District Court

January 13, 2020

cc: counsel